Good morning, Your Honors. May it please the Court, my name is Maziar Razzi and I'm here on behalf of the petitioner Annabelle Gonzalez-Tuazon. This is an immigration matter, a petition from review of the decision of the Board of Immigration Appeals summarily. Hang on a second. Would your suitcase is a little loud so when you get out we'll keep going. There we go. Thank you. As I was saying, this is a petition from review of the decision of the BIA Board of Immigration Appeals summarily dismissing, without an opinion, the petitioner's appeal. I'd like to just cut to the chase with you about the testimony of the 8-year-old. I'm going to tell you what, I'm going to just give you an impression of what I'm looking at here, you know, having a lot of trial experience about what was going on and tell me why I'm wrong. You have an 8-year-old coming in that's got asthma that doesn't speak the language. She also has a written declaration, correct? And that's considered by the court. And the judge basically says the child starts to cry, is getting very upset about having to testify in court is difficult for an adult, but this child has the weight of the world on her shoulders in terms of somehow she, it's her responsibility to save the family from being sent off. And the judge just basically says, not I'm not going to get all written down, but I'm not going to let you put this 8-year-old through this kind of trauma in terms of, and talking about the trauma of testifying, not whether, you know, you're considering the testimony. So if the court had all the information, you know, obviously her hardship, all of those things can be established by other people. But it's real emotional to, you know, bring an 8-year-old in, put them on the stand and, you know, put the judge under the pressure. You know, if you send these people off, look at what you're doing, and the child crying and all of that. How's that really a due process problem? Just because the judge says, I'm going to consider the evidence, and I know what all of the evidence is. And, you know, an 8-year-old isn't going to be able to talk about how her asthma can't get treatment in that country. Other people can do all of that. You know she can't speak the language. You can make all of those inferences. But the judge simply says, you know, I'm not going to let you traumatize this child and leave this child with this for the rest of her life. Well, I guess the answer to that would be that she was denied the family, overall was denied a reasonable opportunity to present their case. Well, if it would have worked to have an 8-year-old crying, that would have been to the benefit of the family. But it seems to me what the court was saying was, I'm going to consider the evidence, but I'm just not going to let you, you know, hang it all on this 8-year-old and subject her to sitting in court and crying. Your Honor, for those of us who litigate these immigration matters in immigration courts, especially this type of case, I think you have to realize how fact-sensitive these cases are. Well, what could she have added? A lot. In fact, I mean, if you look in the — Well, tell me what. All right. I'll tell you exactly what they could have added. For example — It wasn't in her written statement. She says, I will get sick in the Philippines. What does that mean? She said what? I will get sick. I will get sick in the Philippines. Yes. I think that was one of the things she said. And she didn't expand on that. She wasn't allowed the opportunity to expand on how she would get sick. How would she get sick? Well, if she had some — Beyond what the psychiatrist and the mother could testify to. Well — What's this special knowledge that this little kid has that the trained professional and the mother don't have? Well, the thing is, if you look at the — I mean, what was she going to say? I will get sick, fill the blank, because — I'm — I will get sick in the following way that nobody else knows about, to which — Well, this is what happened. On page 105 and 106, when we look at this in the record, the judge starts asking the psychiatrist questions regarding the sickness. And the psychiatrist said, well, I'm not a doctor. I don't know exactly how she would respond there, this and that. That's things that may have been developed with the — Well, she's never lived there except for a few moments when she was a baby. Right. So tell me. I mean, you have to tell me now. Sure. What's she going to say? What does she know about the Philippines beyond what her mother and the doctor know? So she's going to say — and I just said fill the blank. You just told me what the doctor couldn't say. Tell me — fill the blank. She said, I'm going to be very sick in the Philippines if you send — if I go there because — blank. Because of her — she had some skin rashes that she wasn't able to develop. Okay, that's in the record. We know about her skin rashes. Okay, so that's one. She had asthma, severe asthma. We know about her asthma attack. That's in the record. What else? She might have been thrown up. She might have had some — Kidney? Thrown up. She might have vomited. I don't know. I mean, that's the information that would have come out at the time of the — when she was allowed — if she was allowed to testify properly. She would say, well, I know because I was there when I was two months old that if I were in the Philippines, I'd throw up. That's what she would have testified. Right. Or — Now, what kind of — what is the factual basis for that? Well, that's her — that's the testimony that she would have provided there if she was — if she were allowed to testify properly. How in the world would she know that? When the professional doesn't know it because he's not — he doesn't know enough about — he's only a psychiatrist, so he doesn't know enough about medicine to say, yes, she will or will not throw up in the Philippines. And her mother doesn't know. Now, how does this eight-year-old child who's never been there know she is or is not going to throw up when she gets to the Philippines? No, I'm saying — Just on the basis that, you know, if I leave this country, I'm going to throw up anywhere I go? No, I'm just — I'm trying to get to the big picture here as well. I mean, she could have testified as what happened to her when she was there, what occurred to her, because her mom was not with her. How old was she when she was there? She was — I don't have the specific age that she was there. I'll have to look back in the record. But the mother was not there with her when she was in the Philippines. So that's something that could have been testified to. Now, I understand — It seems to me you're better — it seems to me your better argument is not so much whether she's going to throw up if she's — No. But that, you know, some kids are a little more blasé about having to move out of the country than others. And it seems to me you've got a better argument to make that the district judge or the bank — the immigration judge needed to see how this whole thing would affect her vis-à-vis other little eight-year-olds whose mothers are about to be deported. That's exactly right. And if we look at the record, there's questions later on asked about her life here in the United States. I'm not talking about tough questions about how it would be for you to live in the Philippines. I'm even asking questions about factors that are relevant in these types of cases. What kind of friends do you have here in the United States? Are you acculturated to the American life? That's something that the judge completely ignored. And then when she was not — she was prevented from testifying, later on goes back and starts questioning the other people about it, and they say, well, we don't know the answer to these things because she wasn't allowed to testify. Those are things that are very relevant in these types of cases. This is a woman. The mother has been here for 21 years. Now, one other thing. We have a situation where everybody's in that courtroom. We, of course, can't see what the child looked like at the time, how much pressure she was under, whether she was starting to weep. We just don't know that on the cold record, except we do know she was weeping eventually. So the judge is there and the judge says, this kid is just too distraught to go on. And her attorney says at the end of the case, well, the child testified briefly, but it was just too emotional for her to go forward. She just couldn't go forward. It was too emotional for her. That's what her attorney perceived was the case with her. That's what the judge perceived. What are we supposed to do with that? Well, as a primary matter, the attorney, as a preliminary matter, the attorney who actually did the case previously appealed the decision of the judge precisely noting the fact that she was denied an opportunity to testify. I understand what he appealed on, but I'm not asking you that question. I know what he appealed on, and of course he did. And that was a wise thing for him to do or else she couldn't be standing here today. Very wise. But the point is, on the scene, at the time, he recognized the child was too emotional and so did the judge. So what do we do with that? If I recall, what you're referring to is a statement he made in the closing arguments and not during the actual time when it was happening. At the time that this was occurring during the proceedings, he objected and said, look, we've got to let her testify. And then, of course, he was cut off. But if I'm the judge in court and I have someone that is just absolutely collapsed, can't go on, and the lawyer says that they can't go on, are you telling me that the inherent power of the court that I just have to subject that 8-year-old and make them? Absolutely not, because none of the lawyers indicated that she can't go on. It was only the judge who indicated here, cut him off three times before she even started. I mean, we're not talking about a situation where she was allowed to testify a little bit and then, oh, you know what, I'm not going to let him testify anymore. From this second question, the judge started cutting her off. I mean, I cannot, I mean, of course, I wasn't there either, just as you weren't there either, but I've read the record. There's no way, or at least I find highly improbable, that a 9-year-old, 8 going on 9-year-old, just getting off, getting on the stand would be so distraught as not being able to testify. This is the situation, and the situation is very similar to Coleman R here. In Coleman R, which we cited in our brief, same judge, same situation, was not allowed to testify, was not allowed to present their case. Thank you very much, Mr. Razzi. You've used up your time.  We'll hear from the government. Good morning. May it please the Court. Arthur Rabin for the Respondent, John Ashcroft. It seems that the central issue, the overarching issue here is the amount of leeway that any trial judge, an immigration judge, should have in controlling the testimony of a witness, especially of a child witness, when that witness becomes distraught. And I think the Court has probably focused on, well, what was the value of her testimony? You know, basically, if we're going to weigh the rights under due process kind of analysis of Petitioner's right to present testimony versus the immigration judge's duty and obligation to control the manner of that presentation, if we, as the Court has correctly done, focused on what was the value of her testimony to Petitioner's case? Well, do I understand correctly the sole issue here is whether this is going to be an extreme or unusual hardship to this little girl? No, it's to her right. If her mother is removed. Right. But we're focusing on how it's going to affect her. That's right. And she is so distraught that, or at least I guess they want to make the presentation that this is going to be so, so upsetting that she should, that the mother shouldn't be deported. And she, in an effort to show how it's going to affect her, the judge decides this is too much of a strain on the little girl? Well, what the judge decided was he had her statement in evidence, which, by the way, was on top of already in evidence statement by a psychologist saying that this is an exceptionally, extremely shy child that has a lot of trouble opening up, has a lot of trouble expressing herself, even one-on-one with just a friendly psychologist. Well, granted, I mean, that's what the psychologist says, but, you know, it makes a stronger presentation if they're able to demonstrate that to the judge. And I think they did, Your Honor. They brought her, put her on a stand, and the judge, and this is how it went, Your Honor. So is it your position that her behavior on the stand is supportive of what they said in terms of how traumatized this child was? To some extent. To some extent. But, I mean, and that goes more to the prejudice prong of the analysis, not to the error prong. Basically, you know, what did this little girl do for Petitioner's case of staying in this country, that is to show the exceptional, extremely unusual hardship analysis? So, you know, if I'm a trial lawyer and I'm Petitioner's counsel and I'm trying to prove to this judge that this girl is going to be devastated, well, one, I need to put her on a stand, have her testify as to the actual impact on herself. Well, if she's not capable of doing that, then I want her on the stand to show how devastated she is from the get-go. And that's exactly what happened. Now, the judge saw that. He evaluated that. And then, using his obligation as a trial judge, he also said, well, that's enough. She's crying. She's getting upset. And, by the way, Your Honor, correct, on closing argument, opposing counsel or the Petitioner's counsel at that point said, you're right, the girl was too distraught to go forward. So they themselves conceded that the judge acted correctly in stopping the testimony at that point. It wasn't like he stopped it before she even got on. He let her proceed. And when counsel started to do nothing but rehash what's already in her written statement, and that rehashing caused this little girl to basically weep on the stand and become distraught, at that point we believe correctly the immigration judge stepped in and said, that's enough. You've made your point. And to say that was an abuse of discretion or a violation of due process, we believe it doesn't get us there. And Coleman R., which is cited by Petitioner's counsel, we believe it's not on point, it's not helpful, because in that particular case, the immigration judge was shown to be biased against Petitioners. Well, that's not the case here. In fact, it was the other way around. What happened was Petitioner's counsel showed up late with an application for suspension or for cancellation of removal, and the judge says, well, wait a second, I told you you had a cutoff date to present this, and you're late. So at that point, using his discretion, he could have said, you hereby waived your application. Instead, he allowed it to proceed. Now, if this judge was biased against Petitioners, why would he do that? So the record, as it is before us, shows that this was not a biased judge. So Coleman R. does not apply. And lastly, as to the prejudice problem, we don't believe, even if there was any possible error here, that this in any way impacted the case of Petitioners presenting the hardship analysis. Here, the mother testified. And who better knows the impact of the emotional trauma of her own child than the mother? The psychologist testified. The girl put her statement in. And we don't see how much more. And the girl was allowed to testify, and the judge was allowed to see the trauma that this was, this whole proceeding was causing her. So at that point, we don't believe anything more could have been gained based on the fact that if you look at any kind of witness, the witness must have a certain capacity to testify, especially so with a child witness. And like any judge, this judge went through to make sure that this girl was capable of doing it. And to present testimony where this girl could go on and continue, we believe, was unusually harsh. It would have been too harsh at that point. There was no more value to be gained from permitting this child to be basically allowed to be traumatized further on the stand. So we don't believe there was any prejudice from any possible error of stopping the testimony at that point. So subject to the Court's questions, that concludes my testimony. Or I'm sorry, my presentation. Thank you, Mr. Rabin. The case just argued is submitted. Thank you very much. I understand recess.
judges: Fernandez,silverman,callahan